# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| JACKIE S. BENNETT, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Cause No. 1:16-cv-00423-TLS-SLC |
| JAMES CRANE, *et al.*, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is a motion filed by Plaintiff Jackie S. Bennett ("Bennett"), seeking leave of Court to file a third amended complaint in this case. (DE 66). On February 21, 2019, Defendant the United States of America (the "Government") objected to Bennett's motion on the basis of undue delay and futility. (DE 67). Bennett did not file a reply, and her time to do so has passed. N.D. Ind. L.R. 7-1(d)(2)(B). For the reasons discussed below, Bennett's motion to amend will be denied.

## I. PROCEDURAL BACKGROUND

Bennett filed the initial complaint in this case on December 16, 2016 (DE 1), and a second amended complaint on April 6, 2018[1] (DE 41).

On December 24, 2018, Bennett filed a motion seeking leave to amend her complaint a third time. (DE 60). The Government filed a response objecting to Bennett's motion to amend. (DE 62). Bennett did not file a reply; rather, she filed a motion seeking leave to amend her

---

[1] Bennett had filed a motion for leave to file a First Amended Complaint but later filed a motion to withdraw that complaint, which the Court granted. (DE 40; DE 42).
 Additionally, on April 19, 2018, the Government filed a motion to dismiss the second amended complaint. (DE 45). Chief Judge Theresa Springmann granted in part the Government's motion to dismiss. (DE 53).

motion to amend complaint (DE 64), in which she alleged for the first time a claim to recover $848.97 pursuant to the Tucker Act, 28 U.S.C. § 1491, and Little Tucker Act, 28 U.S.C. § 1346. (DE 64 at 3-4).

The Court denied both of Bennett's motions on procedural grounds. (DE 65). However, the Court afforded Bennett the opportunity to file a motion seeking leave to file a third amended complaint (DE 65), and Bennett did so on February 7, 2019 (DE 66). In the instant motion, Bennett seeks leave to amend Count III of her complaint to allege a claim under the Tucker Act and the Little Tucker Act. (DE 66 at 4).

## II. COMPLAINT ALLEGATIONS[2]

The complaint alleges that Bennett worked as a Sales and Service/Distribution Agent at the United States Post Office in Monroeville, Indiana. (DE 1 at 3). Bennett resigned from her position on January 24, 2014. (DE 1 at 3).

On February 24, 2014, Postmaster Denise Antinnucci sent a letter to Bennett, stating that a shortage of approximately $848.97 had been discovered at the Monroeville Post Office following Bennett's departure. (DE 1 at 3). Bennett alleged that the letter demanded repayment of the alleged shortage and implied that criminal charges would be brought if Bennett failed to comply.[3] (DE 1 at 3). Bennett refuted the allegation in Antinnucci's letter but ultimately paid the United States Postal Service $848.97. (DE 1 at 3).

Bennett was later arrested on charges related to the alleged shortage. (DE 1 at 4). After

---

[2] The factual allegations in this section are taken from Bennett's initial complaint. (*See* DE 1). Bennett did not modify these allegations in filing her proposed third amended complaint. (*See* DE 66-1).

[3] However, Judge Springmann determined that the letter did not demand that Bennett pay $848.97 or face criminal charges. Rather, Judge Springmann found that the letter "stated an intent to collect a sum on behalf of the United States Postal Service for a debt based on a shortage in the [Bennett's] office accountability and provided a means by which to challenge whether she was personally liable." (DE 53 at 16).

an audit of the Monroeville post office in December 2019, Postmaster Krista Carr stated that the "office [was] in terrible shape," and advised that there had never been a shortage of $848.97. (DE 1 at 5). Postmaster Carr went on to recommend that Bennett be reimbursed the $848.97 and receive an apology. (DE 1 at 5). To date, Bennett has not received a reimbursement. (DE 66-1 at 19).

### III. DISCUSSION

Bennett seeks to amend her complaint to assert the following claim in Count III:

> 60. Plaintiff paid over to the USPS, upon demand from Defendant Antinnucci, her personal funds for a debt she did not owe.
>
> 61. Defendant, USPS, demanded return of allegedly misappropriated postal funds, which remedy, in cases of actual embezzlement, is available to the USPS under 18 U.S. Code § 1711, but no embezzlement occurred in this case.
>
> 62. Plaintiff, pursuant to the Tucker Act, 28 U.S.C.A. § 1491, demands, and has demanded, return of the $848.97 and for prejudgment interest, due to the improper collection of that money by the USPS.
>
> 63. This Court has jurisdiction of this claim under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), which gives the district courts original jurisdiction, concurrent with the Court of Federal Claims, of any civil action or claim against the United States, not exceeding $10,000 in amount.
>
> 64. Agents of the USPS have admitted that Plaintiff had not embezzled money, and no obligation to pay these funds, and have admitted that the funds should be returned to her.
>
> 65. The Defendant, United States, has illegally exacted Plaintiff's money, and has failed to refund the illegally exacted money, and continues to exercise control over those funds to the financial detriment of the Plaintiff.
>
> 66. Defendant, United States, is liable for the claimed damages.
>
> 67. Plaintiff has never received refund of the payment, and has suffered monetary damages, monetary loss and loss of use in an

amount to be determined at trial.

(DE 66-1 at 8). The Government argues that the Court should deny Bennett's motion to amend because: (1) Bennett has engaged in undue delay in filing the motion, and (2) Bennett's amended Count III does not state a claim for relief.

### A. Standard of Review

"[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (alteration in original) (citation omitted). The Court "need not allow an amendment when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001) (citations omitted); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. Undue Delay

"The Seventh Circuit has held that undue delay, standing alone, is generally not a sufficient reason for denying a plaintiff leave to amend its complaint." *Flanagan v. Allstate Ins. Co.*, No. 01 C 1541, 2007 WL 1381524, at *2 (N.D. Ill. May 3, 2007) (citing *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004)). However, the length of a plaintiff's delay in bringing an amendment increases "the presumption against granting leave to amend." *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992) (citations omitted). "[E]ven without prejudice to the parties, the burden on the court, and the judicial system generally, represents an independent basis for denying leave to amend." *Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2018 WL 1240347, at *11 (N.D. Ill. Mar. 9, 2018). In measuring the prejudice, courts consider the number of times a plaintiff has amended the complaint, the reasons for the delay, the length of time between when the plaintiff learned of the

4

facts supporting the underlying amendment and when the plaintiff moved to amend the complaint, and the procedural posture of the case. *See, e.g.*, *Liebhart v. SPX Corp.*, 917 F.3d 952, 965 (7th Cir. 2019) ("The district court cited the Liebharts' admission that they learned of the possible burial of contaminated concrete on the SPX property on October 11, 2017 but failed to seek leave to amend their complaint until February 22, 2018."); *Flanagan v. Allstate Ins. Co.*, No. 01 C 1541, 2007 WL 1381524, at *2 (N.D. Ill. May 3, 2007) (noting that the case was pending for five years when plaintiffs sought to file an amended complaint, after the close of discovery).

In this case, Bennett argues that there is no prejudice in her requested amendment because "Defendant has been on notice of Plaintiff's claim for her $848.97 in every Complaint and Amended Complaint filed." (DE 66 at 7). Bennett goes on to say that "[t]he facts as alleged in the prior complaints and notice of tort clearly put Defendants on notice of all facts necessary to make out a claim for the return of money improperly collected by the United States." (DE 66 at 7).

Bennett never explains why she could not have brought a claim under the Tucker Act or the Little Tucker Act earlier. Furthermore, her motion demonstrates that she was aware of the facts necessary to bring the claim from the time she filed her first complaint more than two years ago. (DE 66 at 7; *see generally* DE 1). These factors disfavor granting her motion.

However, discovery has not yet commenced, and no dispositive motions deadline or trial date has been set.[4] These factors weigh in favor of granting Bennett's motion. Moreover, the

---

[4] Because the parties have been litigating various iterations of Defendants' motions to dismiss since July 2017 (*see generally* DE 17), the Court has granted their requests to continue the Rule 16 preliminary pretrial conference (*see, e.g.*, DE 19 DE 48; DE 59). As a result, the Court has not yet set pretrial deadlines in this case. However, the lack of pretrial deadlines is not determinative in deciding whether Bennett has engaged in undue delay in bringing the instant motion to amend. *See, e.g.*, *Liebhart*, 917 F.3d at 965; *Flanagan*, 2007 WL 1381524, at *2.

Government never gets around to explaining how it would be prejudiced by an amended complaint.

Ultimately, although Bennett has engaged in undue delay in bringing her motion to amend, such delay, standing alone, is often not sufficient to justify denying a motion to amend complaint. *Park v. City of Chicago*, 297 F.3d 606, 613 (7th Cir. 2002). Therefore, the Court will address whether Bennett's proposed amended complaint is futile.

**B. Futility**

"[F]utility is measured by the capacity of the amendment to survive a motion to dismiss." *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008) (citing *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004)); *see Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). "That means a proposed amendment must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Duthie*, 254 F.R.D. at 94 (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

The Tucker Act does not "create[] substantive rights;" rather it is simply a jurisdictional provision that operates "to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts)." *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009) (citations omitted); *see United States v. Testan*, 424 U.S. 392, 398 (1976) ("The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists." (citation omitted)). A cognizable claim under the Tucker Act is one "for money damages against the United States, and that claimant must demonstrate that the source of substantive law he relies upon can be fairly interpreted as mandating compensation by the Federal Government for damages sustained." *United States v. Mitchell*, 463 U.S. 206, 217

(1983) (internal citations and quotation marks omitted); *see United States v. Norwood*, 602 F.3d 830, 834 (7th Cir. 2010) ("[T]he plaintiff must be able to point to a constitutional, statutory, or regulatory provision that can fairly be interpreted as mandating compensation." (citation and internal quotation marks omitted)). "This is referred to as the requirement for a 'money-mandating' source of law." *Kentera v. United States*, No. 16-CV-1020-JPS, 2017 WL 401228, at *4 (E.D. Wis. Jan. 30, 2017) (citation omitted). "[T]he Tucker Act's waiver of sovereign immunity 'extends only to contracts either express or implied in fact, and not to claims on contracts implied in law.'" *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1316 (Fed. Cir. 2011) (quoting *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996)).

Similarly, the Little Tucker Act provides a basis for jurisdiction, but a plaintiff must still allege a claim "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department "that does not exceed $10,000." 28 U.S.C. § 1346. The Little Tucker Act also does not confer jurisdiction for "any civil action or claim against the United States founded upon any express or implied contract . . . ." *Id*.

The Government argues that Count III fails to state a claim under either the Tucker Act or the Little Tucker Act because Bennett does not identify any statutory, constitutional, or regulatory provision entitling her to relief. Furthermore, the Government argues, the only cognizable theory of recovery the Court could glean from Count III would be for unjust enrichment, which does not constitute a claim under the Tucker Act or the Little Tucker Act. Again, Bennett has not responded to the Government's arguments.

The Government's arguments are well taken. First, Bennett does not cite any legal authority entitling her to relief in Count III of the proposed complaint or the motion to amend

complaint.⁵  Consequently, the Court cannot say what "Tucker remedy" Bennett believes she "might have because [she] does not point to any constitutional, statutory, or regulatory provision that can 'fairly be interpreted as mandating compensation.'"  *On-Site Screening, Inc. v. United States*, 687 F.3d 896, 900 (7th Cir. 2012) (quoting *Norwood*, 602 F.3d at 834).  "[N]ot even the most generous reading of either [Bennett's] original complaint or [her] proposed amended complaint hints of a trace of any claim under the Tucker Act," and thus, her attempt to amend Count III is futile.  *Id*.

Second, the Government contends that the actual theory of recovery in Count III is one for unjust enrichment or quantum meruit, otherwise known as a quasi-contract or a contract implied-in-law.  A quasi-contract "is a legal fiction invented by the common-law courts in order to permit a recovery . . . where, in fact, there is no contract, but where the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise."  *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991) (alteration in original) (citation, footnote, and internal quotation marks omitted).

The Government is correct that Count III resembles a claim for unjust enrichment in that Count III alleges the following:  the United States Postal Service requested money from Bennett, the United States Postal Service received a benefit when Bennett paid the money, the United States Postal Service was not entitled to that money, and the money has not been refunded to Bennett.  (*See* DE 66-1 at 8); *see also Bayh*, 573 N.E.2d at 408 (prevailing on a claim of unjust enrichment requires a plaintiff to demonstrate "that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without

---

⁵ Bennett does cite 18 U.S.C. § 1711 but only in reference to the action that the United States Postal Service could pursue against her for allegedly embezzling the $848.97.  Furthermore, as the Government points out, § 1711 cannot be fairly interpreted as mandating that Bennett be compensated by the federal government in this case.

payment would be unjust"); *see generally Cmty. Care Centers, Inc. v. Sullivan*, 701 N.E.2d 1234, 1239 (Ind. Ct. App. 1998) ("Courts of equity invoke the remedy of restitution in order to avoid unjust enrichment, and unjust enrichment is an 'indispensable element' of such a quasi-contractual action.") (citation omitted). The Government is also correct that if the Court construes Count III as a claim for unjust enrichment, Bennett's motion to amend should be denied because the Tucker Act and the Little Tucker Act do not permit claims for unjust enrichment.[6] *See Lumbermens Mut. Cas. Co.*, 654 F.3d at 1316 (citation omitted); *Dawson v. Great Lakes Educ. Loan Servs., Inc.*, No. 15-CV-475-BBC, 2016 WL 426610, at *3 (W.D. Wis. Feb. 3, 2016).

Therefore, the Court is satisfied that Bennett's third proposed amended complaint would not survive a motion to dismiss because Count III does not plead facts amounting to a plausible claim of relief. *Duthie*, 254 F.R.D. at 94 (citation omitted).

## IV. CONCLUSION

In summary, because Bennett unduly delayed in bringing her motion to amend, and because the claim in Count III of the proposed amended complaint is futile, the Court DENIES Bennett's third motion to amend complaint. (DE 66).

SO ORDERED.

Entered this 24th day of April 2019.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[6] Having concluded that Bennett has failed to state a claim for relief under the Tucker Act or the Little Tucker Act, the Court need not analyze the Government's argument that the proposed Count III is futile because Bennett voluntarily relinquished the $848.97.